IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREGORY D. PEASE,

                Plaintiff,

    v.

FARO TECHNOLOGIES,

                Defendant.

CIVIL ACTION
NO. 15-3586

## OPINION

**Slomsky, J.**                                                 **February 22, 2016**

## I.    INTRODUCTION

Before the Court is Plaintiff Gregory D. Pease's Motion for Leave to File an Amended Complaint. Plaintiff seeks to assert the following causes of action against his former employer, Defendant FARO Technologies: (I) Wrongful Discharge with Specific Intent to Harm; (II) Wrongful Discharge in Violation of Public Policy; (III) Breach of Contract; and (IV) a violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1 et seq. Because the Court finds that Plaintiff's claims for wrongful discharge fail for futility reasons, the Court will deny Plaintiff's Motion for Leave to File an Amended Complaint as to these Counts, but will grant the Motion as to the remaining two causes of action. The original Complaint contained only a claim for wrongful discharge with specific intent to harm.

## II.    FACTS AND PROCEDURAL HISTORY

### a.  Factual Background

Defendant FARO Technologies ("Defendant" or "FARO") offered Plaintiff Gregory D. Pease ("Plaintiff" or "Pease") the position of Director of Engineering, Laser Tracker, by letter

dated July 25, 2011 (the "Offer Letter").  The Offer Letter contains the following language

regarding "Compensation":

> *Base*
> Your annual base salary shall be $130,000, paid bi-weekly.  Your status is exempt.
>
> *Bonus*
> You will be eligible for an annual discretionary* bonus of up to 20% of your annual base earnings.  The bonus payout will be based upon individual, departmental and overall company performance.  Bonus is based upon the calendar year and will be prorated for actual months worked during a given year. Bonuses are paid after the books are closed for the preceding year.  Bonus eligibility is also based upon the satisfactory completion of a mandatory 90-day introductory period.  Therefore you must begin work on or before September 30 in order to be eligible for bonus in a given year.
>
> *Note:  Bonuses are discretionary in that company performance is the first factor considered in determination of bonus amounts.  Bonuses may be cut or eliminated at any time depending on the Company's financial performance during the period of consideration.

(Doc. No. 17-3 at 2.)   The Offer Letter also provides: "Please note that this is an offer of

employment and not an employment contract, and you will be required to sign a Patent &

Confidentiality Agreement and Non-Competition Addendum."  (Id. at 3.)  Plaintiff signed and

accepted the Offer Letter, and was employed by Defendant in his assigned position from August

15, 2011 to December 20, 2013, when he was terminated.  (Doc. No. 17-2, ¶ 6.)

In 2013, Defendant issued a document entitled "Short Term Incentive Plan 2013."  (Doc.

No. 17-2, ¶ 10.)  According to the Proposed Amended Complaint, this document "purported to

impose additional terms, conditions and/or qualifications respecting the payment of the bonus

and/or eligibility for the bonus," but because the terms therein were "not part of the Offer Letter,

they were null and void and of no effect to the extent that they were inconsistent with the terms,

conditions and qualifications respecting the payment of the bonus and eligibility for the bonus set

forth in the Offer Letter."  (Doc. No. 17-2, ¶ 10.)  Although Defendant claims that it relied, in

part, on the Short Term Incentive Plan 2013 for denying the bonus payment, the Proposed Amended Complaint puts this reliance in issue here.  Thus, the crux of Plaintiff's claim is that he was denied payment of his earned bonus for 2013, and that the decision to terminate him was made with the specific intent to avoid payment of the bonus.

### b.  Procedural History

Plaintiff initiated this action in the Court of Common Pleas of Chester County on January 9, 2015.  (Doc. No. 1.)  The initial Complaint asserted a claim for wrongful discharge with specific intent to harm only.  (Doc. No. 1.)  On June 26, 2015, Defendant removed this case to this Court on the basis of diversity of citizenship jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.  (Doc. No. 1.)  On July 2, 2015, Defendant filed a Motion to Dismiss the Complaint. (Doc. No. 6.)  Plaintiff filed a Response in Opposition to the Motion (Doc. Nos. 9, 10), and Defendant filed a Reply (Doc. No. 11).  The Court held a hearing on the Motion to Dismiss on September 17, 2015.  (Doc. No. 13.)  For reasons stated by the Court at the hearing, Plaintiff was granted permission to file a Motion for Leave to File an Amended Complaint (Doc. No. 14), which he filed on October 7, 2015.  (Doc. No. 17.)  Defendant filed a Memorandum of Law in Opposition to Plaintiff's Motion arguing that amendment would be futile.  (Doc. No. 18.)  This latter motion is now ripe for a decision.

The Proposed Amended Complaint is attached to Plaintiff's Motion for Leave to Amend as Exhibit A.  (Doc. No. 17-2.)  As noted above, Plaintiff seeks to add the following causes of action:  (I) Count I: Wrongful Discharge with Specific Intent to Harm; (II) Count II: Wrongful Discharge in Violation of Public Policy; (III) Count III: Breach of Contract; and (IV) Count IV: a violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1 et seq.  As noted, Plaintiff will be allowed to proceed in the Amended Complaint with Counts III and IV only.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(2) provides that after a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Amendments to a complaint pursuant to Fed. R. Civ. P. 15 are "liberally granted" and "rest within the sound discretion of the trial court."  Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983); see also Foman v. Davis, 371 U.S. 178, 182 (1962).  "If the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  Foman, 371 U.S. at 182.  However, a motion to amend a complaint should be denied where the proposed amendment would be futile.  A claim is futile under Fed. R. Civ. P. 15 "where the amendment would not withstand a motion to dismiss."  Massarsky, 706 F.2d at 125; see also Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988); Smith v. Am. Red Cross, 876 F.Supp. 64, 67 (E.D. Pa.1994).

When considering state law claims, the Court must "apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues . . ."  Dick v. Healthcare Risk Solutions, LLC, Civil Action No. 08-2497, 2008 WL 4682621, *2 (E.D. Pa. Oct. 21, 2008) (quoting Gares v. Willingboro Twp., 90 F.3d 720, 725 (3d Cir. 1996)).

### IV.   ANALYSIS

#### A.  Plaintiff Will Be Granted Leave to File a Claim for Breach of Contract

Plaintiff seeks to assert a claim for breach of contract related to Defendant's failure to pay Plaintiff a prorated bonus for the year 2013 pursuant to the Offer Letter.  Plaintiff's proposed cause of action states:

35.    The Offer Letter created a contract between [Plaintiff] and [D]efendant that was incidental or collateral to his at-will employment with [D]efendant.  Pursuant to that contract, [Plaintiff] was entitled to a prorated annual bonus regardless of the alleged justification for his termination.

36.   By failing to pay [Plaintiff] the prorated annual bonus to which he was entitled, Defendant breached the contract created by the Offer Letter.

(Doc. No. 17-2, ¶¶ 35, 36.)

Defendant argues that allowing this cause of action to stand would be futile for the following reasons:  (1) the Offer Letter is not a contract, and states "Please note that this is an offer of employment and not an employment contract . . .;" (2) the language in the Offer Letter is not sufficiently definite to form a contract, and states that bonuses are "discretionary" and "may be cut or eliminated at any time;" (3) Plaintiff was an at-will employee and, as such, Defendant was free to change his compensation at any time, and Defendant's "Short Term Incentive Plan 2013" imposed additional terms and conditions to Plaintiff's compensation, under which Plaintiff is not eligible for a bonus[1]; and (4) Plaintiff does not cite any cases that support his claim, and if "routine offer letters are contracts, they will both lose their usefulness and the courts will be swamped with litigation over them."  (Doc. No. 18 at 10-13.)  Defendant additionally contends that Plaintiff "concedes that he would not be eligible for any bonus under FARO's Short Term Incentive Plan."[2]  (Doc. No. 18 at 12.)  Defendant's arguments are without merit at this stage of proceedings for the following reasons.

---

[1]    Defendant does not specify the exact terms in the "Short Term Incentive Plan 2013" which would modify Plaintiff's compensation and also would be the basis as to why Plaintiff is not eligible for a bonus.

[2]    The Court is not aware of any such concession by Plaintiff, and as will be explained, it is a question of fact whether the 2013 Short Term Incentive Plan applies here.

Under Pennsylvania law, the elements of a cause of action for breach of contract are: (1) the existence of a contract, including its essential terms; (2) a breach of the duty imposed by the contract; and (3) damages resulting from the breach.  See McShea v. City of Philadelphia, 995 A.2d 334, 340 (Pa. 2010).  Moreover, an employer "can create a unilateral contract by offering additional terms of employment conditioned upon the employee's continued performance of his job." Pilkington v. CGU Ins. Co., No. CIV. A. 00-2495, 2000 WL 33159253, *6 (E.D. Pa. Feb. 9, 2001) (citations omitted).  This may be "characterized as a modification of the at-will employment relationship . . . [or] a contract incidental or collateral to at-will employment." Id. Under such a contract, "[a]n employer who offers various rewards to employees who achieve a particular result or work a certain amount of overtime, for example, may be obligated to provide those awards to qualifying employees, although retaining the right to terminate them for any or no reason." Id.  Bonus incentive programs may constitute such unilateral contracts.  Id. at *7.

Offer letters may be found to create a contract or contractual obligations.  See Divenuta v. Bilcare, Civil Action No. 09-3657, 2011 WL 1196703 (E.D. Pa. Mar. 30, 2011); Seifert v. Prudential Ins. Co. of America, Civil Action No. 13-7637, 2014 WL 2766546 (E.D. Pa. June 18, 2004); Linden v. SAP America, Inc., No. Civ. A. 03-3125, 2004 WL 1047719 (E.D. Pa. May 6, 2004).  In Divenuta, the court denied an employer's motion for summary judgment on a former employee's claim for breach of contract for failure to pay incentive payments set forth in his offer letter.  2011 WL 1196703.  The offer letter included language similar to the language in the Offer Letter in the instant case, stating that the "letter does not constitute either an employment contract or a guarantee of employment for a specified period of time" and "all benefits and company polices may be subject to change."  Id. at *1.   The court held that the employment relationship was "at will," could be terminated at any time, for any or no reason, and that the

6

employer could prospectively alter the employee's compensation.  Id. at *3.  However, the court

found that the offer letter was ambiguous as to the plaintiff's entitlement to incentive

compensation and thus "present[ed] a question of interpretation for [the fact-finder]."[3]  Id. at *5.

The court further noted, "a contract is ambiguous if it is reasonably susceptible of different

constructions and capable of being understood in more than one sense."  Id. at *6 (quoting

Hutchinson v. Sunbeam Coal Corp., 519 A.2d 385 (Pa. 1986)).  In allowing the breach of

contract claim to proceed as to the incentive payments, the court reasoned that the provision in

the offer letter could be interpreted to mean that either (a) entitlement to payment was within the

discretion of the company, or (b) the company had the discretion to alter the terms of the plan,

but as long as the plan remained in effect, the employee was entitled to the payment.  Id. at *6.

The facts in Divenuta are similar to those in the instant case, and the same reasoning

applies here.  Plaintiff has alleged that the Offer Letter constituted a contract, under which

Defendant had a duty to pay Plaintiff a bonus; Defendant breached that duty by failing to pay the

bonus; and Plaintiff has suffered damages.  The Bonus provision in the Offer Letter is

ambiguous.  The provision could mean that entitlement to payment was within the complete

discretion of the company, or it could mean that the amount of the bonus (up to 20%) was in the

discretion of the company, but so long as the bonus program was continuing, Plaintiff was

entitled to a bonus.  Moreover, there is a question of fact as to whether the 2013 Short Term

Incentive Plan applies to Plaintiff, and whether its terms affected Plaintiff's eligibility for the

bonus as set forth in the Offer Letter.  Thus, at this stage of proceedings, Plaintiff has plausibly

---

3    In Divenuta, the provision in the offer letter regarding incentive compensation stated in
     relevant part:  "You will be eligible for the greater of (a) an override of ½% on gross revenue
     . . . or (b) 50% of your salary.  . . . Incentive pay plans are subject to the sole and complete
     discretion of management. . . ."  Id. at *6.

set forth a claim for breach of contract. Allowing Plaintiff leave to amend the Complaint to add a breach of contract claim would not be futile.

### B. Plaintiff Will Be Granted Leave to File a Claim for Violation of the Pennsylvania Wage Payment and Collection Law

Plaintiff also will be granted leave to add a claim for violation of the Pennsylvania Wage Payment and Collection Law. Plaintiff alleges that Defendant's failure to pay him the prorated bonus to which he is entitled violates the Pennsylvania Wage Payment and Collection Law, which entitles him to payment of his bonus, liquidated damages, attorney fees, and costs. (Doc. No. 17-2, ¶¶ 38-45.) Defendant argues that this claim would be futile because Plaintiff has failed to establish as a prerequisite a contractual right to the bonus. (Doc. No. 18 at 14-15.) Defendant further alleges that the 2013 Short Term Incentive Plan governs payment of the bonus and requires individuals to be employed on the date the bonus is paid, and because Plaintiff was not, he failed to establish that he earned the bonus. (Id. at 14.) Again, Defendant's arguments are unavailing at this stage of the proceedings.

The Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1 et seq. ("WPCL") was enacted to "provide a vehicle for employees to enforce payment of their wages and compensation held by their employers." Divenuta, 2011 WL 1196703, at *9 (quoting Harman v. Baker, 766 A.2d 347, 352 (Pa. Super. Ct. 2000)). The WPCL requires employers to pay separated employees, "the wages or compensation earned." 43 Pa. Cons. Stat. § 260.5(a). "Wages" are defined to include "all earnings of an employee, regardless of whether determined on time, task, piece, commission, or other method of calculation." 43 Pa. Cons. Stat. § 260.2a. Bonuses are wages within the WPCL. Blackwell-Murray v. PNC Bank, 963 F. Supp. 2d 448, 470 (E.D. Pa. 2013); Linden v. Sap America, Inc., 2004 WL 1047719, *7 (E.D. Pa. May 6, 2004). The WPCL "does not create a new right to compensation, but rather, merely establishes a

right to enforce payment of wages and compensation that the employer has legally obligated itself to pay." Divenuta, 2011 WL 1196703, at *9 (quoting Scully v. U.S. WATS, Inc., 238 F.3d 497, 516-17 (3d Cir. 2001)). In order to bring a WPCL claim, Plaintiff "must demonstrate that he was contractually entitled to compensation and that he was not paid." Id.

Plaintiff has alleged in the Proposed Amended Complaint that he is an "employee" and Defendant is an "employer" within the meaning of the WPCL; that he is entitled to a bonus under the terms of the Offer Letter; that the bonus constitutes wages under the WPCL; and that Defendant failed to pay him the bonus. (Doc. No. 17-2, ¶¶ 39-45.) Whether Plaintiff actually was entitled to the bonus under the Offer Letter is not for the Court to decide at this stage,[4] and allowing Plaintiff to assert a cause of action under the WPCL would not be futile. As such, Plaintiff is granted leave to file an Amended Complaint asserting a claim for violation of the WPCL.

## C. Plaintiff Will Not Be Granted Leave to File a Claim for Wrongful Discharge with Specific Intent to Harm

Plaintiff will not be granted leave to proceed with a cause of action for wrongful discharge with specific intent to harm because the claim would be futile. Plaintiff seeks to allege

---

[4]   In arguing that Plaintiff is not entitled to the bonus, Defendant relies on Blackwell-Murray v. PNC Bank, supra, which held that "where a bonus or incentive requires that an employee be actually employed by the employer at the time the payment comes due, the employee has not earned that bonus or incentive." (Doc. No. 18 at 13.) Defendant asserts that the 2013 Short Term Incentive Plan governs the entitlement and payment of the bonus, and provides that "individuals must be actively employed by the Company on the date the bonuses are paid." (Id. at 14.) Defendant argues that "Plaintiff was terminated before the 2013 bonus was paid, as Plaintiff concedes," and as such has not earned the bonus. (Id.) Plaintiff argues to the contrary that the Short Term Incentive Plan 2013 was "null and void" and had "no effect" on him. (Doc. No. 17-2, ¶ 10.) At this stage, in deciding a Motion for Leave to File an Amended Complaint, before any discovery has been conducted, the Court cannot conclude that this cause of action would be futile. The Offer Letter did not contain the language relied on by Defendant, and there are questions of fact as to whether the Short Term Incentive Plan 2013 applied to Plaintiff and whether it was binding, and when the bonus, if any, was to be paid.

that "[D]efendant terminated Pease with specific intent to harm him, including timing his termination so that defendant would not be obligated to pay Pease the bonus of 20% of his annual base salary."  (Doc. No. 17-2, ¶ 16.)  Plaintiff relies on Geary v. U.S. Steel Corp., 319 A.2d 174 (Pa. 1974), to support his argument that Pennsylvania recognizes a common law cause of action for wrongful discharge with specific intent to harm.  Plaintiff asserts that, in Geary, "the Pennsylvania Supreme Court left open the door for a plaintiff, making the proper allegations, to assert a viable cause of action for wrongful discharge with specific intent to harm. . . . [and] no subsequent Pennsylvania Supreme Court case has abrogated this aspect of the decision."  (Doc. No. 17-7 at 2-3.)  Defendant counters that Pennsylvania in fact does not recognize a claim for wrongful discharge based on specific intent to harm, and that a cause of action for wrongful discharge only exists where the termination violates a clear mandate of public policy.  (Doc. No. 18 at 5-8.)  In this regard, Defendant is correct, and Plaintiff's arguments on this point are unavailing.  Although there has been repeated discussion in caselaw over the holding in Geary, Pennsylvania state and federal courts when applying Pennsylvania law have clearly stated that wrongful termination with specific intent to harm is not recognized as a viable cause of action.

In Geary, the Supreme Court of Pennsylvania considered whether a non-statutory cause of action for an employer's termination of an at-will employment relationship could exist.  319 A.2d 174 (Pa. 1974).  The court considered novel theories urged by plaintiff, including analogizing the employment relationship to the tort of unjustified interference with prospective advantage, tort liability imposed on the actor on the basis of motive (which requires specific intent to cause harm or accomplish an ulterior purpose), and interference by a third party in a prospective business relationship.  Id. at 177-78.  The court did not hold, however, that a cause of action for wrongful discharge based on specific intent to harm existed.  Instead, the court found

10

that plaintiff failed to set forth facts indicating he was fired "for the specific purpose of causing

him harm," "coercing him to break any law," or with "disinterested malevolence," and therefore,

"under [plaintiff's] own theory . . . he failed to state a claim upon which relief can be granted."

Id. at 178.  Moreover, the court concluded that:

> We hold only that where the complaint itself discloses a plausible and legitimate
> reason for terminating an at-will employment relationship and no clear mandate
> of public policy is violated thereby, an employee at will has no right of action
> against his employer for wrongful discharge.

Id. at 180.

In subsequent cases, courts have acknowledged that Geary did create a level of confusion

about this cause of action.  For example, in Booth v. McDonnell Douglas Truck Services, Inc., a

case relied upon by Plaintiff, the Superior Court of Pennsylvania stated that termination with

specific intent to harm gives rise to a cause of action for wrongful discharge, but found that it did

not apply in that case.  585 A.2d 24, 28 (Pa. Super. Ct. 1991).

Nevertheless, although decided before the Booth decision, the Supreme Court of

Pennsylvania has explicitly stated in Clay v. Advanced Computer Applications, Inc.:

> [A]s a general rule, there is no common law cause of action against an employer
> for termination of an at-will employment relationship.  Exceptions to this rule
> have been recognized in only the most limited of circumstances, where discharges
> of at-will employees would threaten clear mandates of public policy.

559 A.2d 917, 918 (Pa. 1989); see also Paul v. Lankenau Hosp., 569 A.2d 346, 348 (Pa. 1990).

In addition, in Paul, the Supreme Court of Pennsylvania stated that the Geary decision

"specifically answered in the negative to the central question of whether the time has come to

impose judicial restraints on an employer's power of discharge."  569 A.2d at 348.  Furthermore,

in Paul, the Supreme Court of Pennsylvania cited to then Chief Justice Nix's concurrence in

Clay, which noted:

> This Court did not announce a cause of action for wrongful discharge in <u>Geary</u>. Indeed the language in <u>Geary</u> clearly states that a cause of action for wrongful discharge in an at-will employment relationship does not exist.

569 A.2d at 348. In Chief Justice Nix's concurrence, he further referred to the language of <u>Geary</u> as "gratuitous dicta." <u>Id.</u>

Ten years later, in <u>McLaughlin v. Gastrointestinal Specialists, Inc.</u>, the Supreme Court of Pennsylvania considered <u>Geary</u>, <u>Clay</u>, and <u>Paul</u>, and again found that "[a]n employee will be entitled to bring a cause of action for a termination of [the at-will employment] relationship only in the most limited of circumstances where the termination implicates a clear mandate of public policy in [the Commonwealth of Pennsylvania]." 750 A.2d 283, 287 (Pa. 2000). The Superior Court of Pennsylvania has also explicitly held that wrongful discharge based on specific intent to harm is no longer a viable theory in Pennsylvania in light of <u>Paul</u>, thus further discrediting its earlier <u>Booth</u> decision. <u>Donohue v. Federal Exp. Corp.</u>, 753 A.2d 238, 245 (Pa. Super. Ct. 2000) (citing <u>Krajsa v. Keypunch, Inc.</u>, 622 A.2d 355, 360 (Pa. Super. Ct. 1993)). Further, in <u>Weaver v. Harpster</u>, the Supreme Court of Pennsylvania again held that "an employee may bring a cause of action for a termination of that relationship only in the most limited circumstances, where the termination implicates a clear mandate of public policy." 975 A.2d 555, 563 (Pa. 2009). <u>See also</u> <u>Bensinger v. Univ. of Pittsburgh Med. Ctr.</u>, 98 A.3d 672, 681 (Pa. Super. Ct. 2014) (stating that in <u>Yetter v. Ward Trucking Corp.</u>, 585 A.2d 1022, 1025-26 (Pa. Super. Ct. 1991), the Superior Court of Pennsylvania clarified that a wrongful discharge action may not be brought solely on the ground of specific intent to harm.)

Moreover, the Eastern District of Pennsylvania has similarly found that Pennsylvania does not recognize a cause of action for wrongful discharge based on specific intent to harm. In <u>Mulgrew v. Sears Roebeck & Co.</u>, the court held:

> Although there has been a debate concerning whether Pennsylvania recognizes a cause of action for wrongful discharge based upon a theory of an employer's specific intent to harm, . . . based upon the Pennsylvania Supreme Court's decisions in Geary v. United States Steel Corp., . . . Clay v. Advanced Computer, . . . and Paul v. Lankenau Hospital, . . . this court finds that no such exception is recognized. . . . Contrary decisions . . . which interpret the Pennsylvania Supreme Court's failure in Geary to explicitly reject a specific intent to harm exception as tacit acquiescence, do not adequately take into consideration the holdings in Clay and Paul as well as the majority of recent superior court decisions.

868 F. Supp. 98, 100-102 (E.D. Pa. 1994); see also Melendez v. Horizon Cellular Tel. Co., 841 F. Supp. 687, 692-94 (E.D. Pa. 1994) (finding that "the Pennsylvania Supreme Court, if faced with this issue again, would definitively hold that Pennsylvania does not recognize the tort of wrongful discharge with specific intent to harm," and noting "inasmuch as the Geary dictum never matured into a formal holding of the Pennsylvania Supreme Court, there was nothing for the Supreme Court to overrule when it decided Clay."); Dick v. Healthcare Risk Solutions LLC, Civil Action No. 08-2497, 2008 WL 4682621 (E.D. Pa. Oct. 21, 2008) (finding "[t]hat a public policy concern represents the *only* exception to the bar on claims of wrongful termination of at-will employment has now become well-settled in Pennsylvania law," and holding that "Pennsylvania law does not recognize a cause of action for wrongful termination based on a specific intent to harm."); Pyles v. City of Phila., No. Civ. A. 05-1769, 2006 WL 3613797 (E.D. Pa. Dec. 8, 2006) (finding that the Pennsylvania Supreme Court "would hold that the tort of wrongful discharge with specific intent to harm is not recognized in Pennsylvania."); Zoe v. Impact Systems, Inc., No. 08-cv-1483, 2009 WL 275181 (M.D. Pa. Feb. 4, 2009) (noting that the specific intent to harm exception to at-will employment does not exist under Pennsylvania law).

In accordance with the above holdings, allowing an amendment of the Complaint to assert a cause of action for wrongful discharge with specific intent to harm would be futile because Pennsylvania does not recognize such a cause of action.  Furthermore, no public policies

13

are at stake in this case.  Thus, it would be futile to permit this claim to be added to the Amended Complaint.

**D.  Plaintiff Will Not Be Granted Leave to File A Claim for Wrongful Discharge in Violation of Public Policy**

Amendment to include a cause of action for wrongful discharge in violation of public policy also will not be allowed on futility grounds.  The basis for Plaintiff's claim is that Defendant terminated him in violation of public policy as set forth in the WPCL.  (Doc. No. 17-2, ¶¶ 21-33.)  Plaintiff asserts that termination with specific intent to deny him payment of the earned bonus violates the "strong public policy in Pennsylvania to protect an employee's right to obtain earned wages and benefits from his employer."  (Doc. No. 17-7 at 4-5.)  Defendant argues that the WPCL does not bar an employer from terminating an at-will employee, and Plaintiff has failed to allege a clear mandate of public policy that has been violated.  (Doc. No. 18 at 8-9.)

Pennsylvania applies "an extremely strong" presumption of at-will employment for "all non-contractual employment relations."  McLaughlin, 750 A.2d at 287.    It is well established that under Pennsylvania law, absent a statutory or contractual provision to the contrary, an employer may terminate an at-will employee "for good reason, bad reason, or no reason at all." Dick, 2008 WL 4682621, at *2 (quoting Herschberger v. Jersey Short Steel Co., 575 A.2d 944 (Pa. Super. Ct. 1990)).  A cause of action for termination of an at-will employment relationship exists "only in the most limited circumstances, where the termination implicates a clear mandate of public policy" of the Commonwealth of Pennsylvania.  Weaver, 975 A.2d at 563.  "The power of the courts to declare pronouncements of public policy is sharply restricted," and the court can only declare a public policy "when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it."  Id. "Pennsylvania Supreme Court decisions 'preclude us from undertaking the task of creating and

forming public policy with respect to wrongful discharge on our own initiative.'"  Mulgrew, 868 F.Supp. at 102.

Public policy is determined by "examining the precedent within Pennsylvania, looking to [the Pennsylvania] Constitution, court decisions and statutes promulgated by [the Pennsylvania] legislature."  McLaughlin, 750 A.2d at 288.  Public policy violations have been recognized in the following categories:  (1) an employer requires an employee to commit a crime; (2) an employer prevents an employee from complying with a statutory duty; or (3) the discharge of the employee is specifically prohibited by statute.  Pyles, 2006 WL 3613797, at *7 (citation omitted).  In addition, the Pennsylvania Supreme Court held in McLaughlin that a claim for wrongful discharge in violation of public policy requires a plaintiff to "do more than show a possible violation of a federal statute that implicates only her own personal interest.  The plaintiff in some way must allege that some *public policy* of *this* Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee."  McLaughlin, 750 A.2d at 289 (emphasis in original).

Courts have addressed claims similar to Plaintiff's, and have found that no public policy allegedly making a termination wrongful arose in those cases.  In Elliott v. Horizons Unlimited Computer Services, Inc., a Court of Common Pleas in Pennsylvania held that discharge in retaliation for filing a claim under the WPCL does not violate a public policy that would lead to a cause of action for wrongful discharge.  No. 87-S-688, 1989 WL 223549 (Pa. Ct. Com. Pl. Oct. 18, 1989).  Similarly, in Donaldson v. Informatica Corp., a court in the Western District of Pennsylvania held that termination in retaliation for the employee having filed a claim alleging WPCL violations does not fall under the public policy exception.  792 F. Supp. 2d 850 (W.D. Pa. 2011).

In <u>Pilkington v. CGU Ins. Co.</u>, the plaintiff asserted a wrongful discharge claim arguing

public policy was violated by "knowingly misusing sexual harassment laws to find a fraudulent

reason to terminate plaintiff . . . and escape its contractual obligations in the bonus incentive

contract."   No. CIV. A. 00-2495, 2000 WL 33159253, at *5 (E.D. Pa. 2001).   The court held

that:

> A pretextual termination to avoid a contractual obligation to pay a bonus, at least
> in the circumstances alleged, does not remotely constitute the type of conduct to
> which the narrow public policy exception has been held to apply.   . . . the court
> also notes that a claim for wrongful discharge may be maintained only in the
> absence of any statutory remedy.

<u>Id.</u>   This holding is directly on point with the factual allegations in the instant case.   Plaintiff is

alleging that Defendant terminated him with the intent to avoid paying him his earned bonus,

contending that the public policy was set forth in the WPCL.   As noted, courts have specifically

held that the use of this law does not rise to the level of a clearly established public policy.   <u>Id.</u>

Moreover, the public policy exception only applies when the plaintiff does not have a statutory

remedy, which the Plaintiff does have here.   <u>Id.</u>   In <u>Booth v. McDonnell Douglas Trust Services,</u>

<u>Inc.</u>, the Superior Court of Pennsylvania reasoned that:

> while the [WPCL] applies to protect the commissions earned by Booth prior to his
> discharge, Booth has not told us how his discharge prevents him from enforcing
> this contract.   In point of fact, the two counts remaining in the cases are proof that
> Booth is quite able to pursue his contractual cause of action for the commissions
> he claims are due him.   We can agree that individuals have a public policy right to
> enforce their contracts.   We do not understand how such a right is infringed by
> Booth's discharge.

585 A.2d 24, 28 (Pa. Super. Ct. 1991); <u>see also</u> <u>Duran v. Cty. of Clinton</u>, No. 4:14-cv-2047, 2015

WL 5675580, *13 (M.D. Pa. Sept. 25, 2015) (citing to several cases to support the holding that

"the existence of statutory remedies counsels against [applying the] public policy exception");

<u>Finn v. Porter's Pharmacy</u>, Civil Action No. 15-661, 2015 WL 5098657, *4 (W.D. Pa. Aug. 31,

2015) (noting that "the public policy exception may only be invoked in the absence of any applicable statutory remedy").

Here, Plaintiff has not alleged that he was terminated because he was asked to commit a crime and refused, that he was terminated because Defendant prevented him from complying with a statutory duty, or that his discharge is specifically prohibited by statute.  Furthermore, since courts have held that retaliation for filing a complaint pursuant to the WPCL does not qualify as a public policy exception, a claim of failure to pay earned wages under the WPCL certainly does not either.  Plaintiff's termination plainly does not prevent him from seeking recovery of the bonus which he claims is owed to him through his breach of contract and WPCL claims.  Plaintiff has a statutory remedy to pursue for recovery of his earned bonus.  This is not a case where the public policy exception arises.  Thus, futility precludes granting leave to amend on this count.

## V.      CONCLUSION

Plaintiff's Motion for Leave to File an Amended Complaint (Doc. No. 17) will be granted in part and denied in part.  An appropriate order follows.